UNITED STATES of America, Plaintiff,

v.

GARLICK ENTERPRISES d/b/a
Garlick Helicopters, Defendants.

No. CV 84–136–M–RES.

United States District Court,
D. Montana,
Missoula Division.

June 17, 1987.

Carl E. Rostad, Asst. U.S. Atty., Great Falls, Mont., for plaintiff.

Larry Persson, Hamilton, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

In this case, the plaintiff, United States of America, seeks to impose penalties upon defendant, Garlick Enterprises, d/b/a Garlick Helicopters. The case was submitted on an agreed statement of facts supplemented by affidavits. The violations charged are all based upon the reports on FAA Form 337 submitted to the Federal Aviation Administration (FAA) by the defendant. So far as the record here shows, there was no independent investigation.

I find no regulation which requires that the Form 337 supply detailed information as to each repair sufficient to enable the FAA, by an inspection of the Form 337, to determine that the regulation has been obeyed. I think that the burden is on the government to show that there has been, in fact, a violation and unless the Form 337

discloses, on its face, a violation or there is independent evidence of a violation, I think the violation is not proved.

## FINDINGS OF FACT

### 1.

(This finding relates to the violation alleged in paragraph IV of the complaint and to similar paragraphs in which the same violation is alleged.)

The complaint charges in paragraph IV: On or about February 1, 1981, defendant performed an annual inspection on N91350, a Bell Model UH–1B helicopter. At that time, defendant was not rated to perform any maintenance on Bell Model UH–1B helicopters.

Defendant was authorized by a certificate dated March 12, 1980, to:

operate an approved REPAIR STATION with the following ratings

### AIRFRAME

### POWERPLANT

\* \* \* \* \* \*

LIMITED RATINGS
POWERPLANT—Powerplant repairs limited to removal and installation of engine cylinder assemblies and/or powerplant accessories. Work specified under this limited rating to be performed only on those engines of the aircraft for which this repair station is rated.
AIRFRAME Sikorsky H 34, S–58, S–61 Bell 47 Series, 204, 205 Fairchild Hiller FH 1100 Huges 269 369

Agreed Statement of Facts, Exhibit A.

Defendant also had a Type Certificate dated March 4, 1981, for "Bell Helicopter UHIB (Restricted Category)." Exhibit B.

Garlick owned surplus military helicopters which it intended to use and applied for a Type Certificate for the helicopters and for authority to repair them. The Type Certificates data sheet shows that the helicopters were powered with Lycoming engines which are turbine engines. A Type Certificate and a Repair Station Cer-

tificate were issued by the FAA, but if the government is correct in this case, those certificates did not authorize Garlick to maintain its own helicopters.

Plaintiff contends the Bell Model UH–1B is not a Bell Model 204 and that hence defendant had no authority to repair it. Plaintiff argues that a comparison of the data sheets in Exhibits B and B2 show differences between the Bell UH–1B and Bell Models 204B, 205A and 205A–1. No data sheet for the Bell 204 is shown and it may be there is none. However, the manufacturer's plate, Exhibit T, shows:

| MANUFACTURERS MODEL | CUSTOMERS MODEL |
|---|---|
| 204 | UH – 1B |

An airworthiness certificate, Exhibit R, dated 02–02–81, issued by the FAA, described the aircraft as

| BUILDER  Bell | MODEL  UH–1B/204 |
|---|---|

Certainly, one purpose of the model designation is to tell the owner what he may fly and what he may repair. In my opinion, when it is shown that both the manufacturers and the FAA refer to the UH–1B as a Bell UH–1B 204, that certificate holder is entitled to repair the UH–1B. If there is confusion, it is the fault of the FAA.

■ I specifically find that plaintiff has not borne its burden of proving that defendant lacked authority to repair the UH–1B. The violation in Paragraph IV of the complaint was not proved.

### 2.

Paragraph V of the complaint charges: On or about April 21, 1981, defendant altered N394HP, a Bell Model UH–1B helicopter, by replacing critical main rotor head components installed on that helicopter with parts that were not approved for that helicopter. Furthermore, at that time defendant was not rated to perform any maintenance on Bell Model UH–1B helicopters.

The Form 337 recites:

DESCRIPTION OF WORK ACCOMPLISHED

Main rotor yoke Part # 204–011–102–5 removed and replaced with 204–011–102–17 yoke.

Replacement accomplished to allow use of upgraded straps, new straps have longer life and are stressed to 130,000 lbs tension load. Old straps are stressed to 110,000 lbs. information from Bell source control drawings, Part # 97499204012112 Rev H.

Aircraft test flown and found to perform the same as with old yoke.

Aircraft: N394 HP.

Agreed Statement of Facts, Exhibit C, page 3.

■ The affidavit of Blake filed by the government states that the U.S. Army Technical Manual shows part number 204–011–102–1 as the proper part for the UH–1B and concludes that part number 204–011–102–17 may not be installed on the main yoke assembly. There is however nothing in the record which disputes the statement of the inspector. The part obviously fit and performed satisfactorily. In my opinion, the mere fact that the part was not specified in the U.S. Army Technicl Manual does not prove that it was a violation to install what may have been an improved version of the specified part.

I find that the violation in paragraph V of the complaint was not proved.

3.

■ Paragraph VI of the complaint states that Garlick returned to service a Lycoming Model T53–L11D engine. This is a turbine engine. The Repair Station Certificate limits the authority to "removal and installation of engine cylinder assemblies." The violation charged in paragraph VI was proved.

4.

Paragraph VIII charges:

On or about April 28, 1981, defendant performed major alterations to aircraft N394HP by installing a bubble window in the left front door, moving the battery to a different location, installing a gyro power inverter and artificial horizon, and moving the engine torque, N1, and EGT gauges to a different location.

The Form 337 states:

DESCRIPTION OF WORK ACCOMPLISHED

Install bubble window in left front door.

Bubble Window made from Standard aircraft Plastic-and installed in accordance with IW. 43–131A Chapter 9 par. 37.7. Aircraft test flown and found to be Airworthy, with no adverse flight characteristics.

Moved Battery to front of aircraft IAW. T.C., H13 WE Drawing GH 80 921 & 921–1 part 2, dated 30 September 1980. New weight and Balance figured this date.

Installed three (3) phase Gyro Power Inverter at station 3, 24V, D.C. feed line 20 Ga. copper aircraft wire hooked to inverter D.C. circuit breaker-Bell J–8 three (3) phase artificial horizon installed in dash in original location and wired to inverter with 20 ga. aircraft wire.

Moved Engine torque, N.I. and EGT to left side near door post for ease of sight, when flying with Bubble door. EGT and NI re-cablebrated [sic], and checked Bracket formed using 2024–T3, 050 using standard instrument brackets, attached to existing aircraft structure with AN3 bolts and self locking nuts.

I find that the alterations described were major alterations. It may be that the literature provided does not form an adequate basis for FAA approval, but the record does not show that the alterations were improper. It may be that the bubble windows were FAA approved Perkins Plastics, Inc. windows (Exhibit H) and that IW 43.-131A Chapter 9 par. 37.7 shows the proper method of installation.

The battery may have been moved to satisfy the requirements of the Type Certificate which required the battery to be moved in accordance with the G.H. 80 921 & 921–1 part 2, dated September 30, 1980.

It would appear that the installation of a gyro powered inverter would be an improvement. In any event, it is not shown that the inverter was improperly installed.

The movement of the gauges would appear to make them more visible to the operator. There is nothing to show that they were not correctly recalibrated.

■ The Form 337 shows that the aircraft was flown and found to be airworthy with no adverse flight characteristics. I find that the violation alleged in paragraph VIII of the complaint was not proved.

### 5.

Paragraphs X and XI and XII and XIII charge the same violations with respect to different helicopters. For the reasons stated with respect to Paragraph VIII of the complaint, the violations alleged in Paragraphs X and XI and XII and XIII of the complaint were not proved.

### 6.

Paragraph XIV of the complaint charges: On or about May 5, 1981, defendant performed major alterations to N5598G by installing Griffith Polymer Bucket wiring and an onboard weighing system.

The Form 337 shows:

Griffith Polymer Bucket wiring was installed IAW 7–10–80–B.D.M. Power wire # 12 from D.C. buss thru 10 amp breaker to Bucket relay, mounted at station + 2.3 central switch, mounted on collective stick on left side of helicopter, mounted on bracket, IAW 43.13 IA.

Cannon plug mounted forward of hell hole in existing panel. All work IAW standard practices.

Installed onboard weighing system, load cell IAW Drawing 2519 and STC SH733NW which is for 204B and this UH–1B is the type of aircraft, using the same A/C system as the 204B.

Agreed Statement of Facts, Exhibit N.

Blake's affidavit states that the alteration was not approved for the Bell UH–1B. For the reasons stated in connection with Finding No. 1, I find the violations alleged in paragraphs XIV and XV were not proved.

### 7.

Paragraph XVI of the complaint is the same as Paragraph XIV except that it refers to a different helicopter.

For the reasons stated, I find the violations charged in paragraphs XVI and XVII are not proved.

### 8.

Paragraph XVIII of the complaint charges:

On or about May 14, 1981, defendant performed major alterations to N5598G by removing two rotary inverters and installing one static inverter.

The Form 337 states:

Removed two (2) rotary inverters from station. 193.62. Installed one (1) static inverter, Flite Tronics Model P.C. 50., which meets TSO C73 at station 3.

Ran # 12 wire to D.C. buss inverter, input rated at 28V D.C. 2.55 amps, 5 amp breaker installed in feed line. All three (3) phase instruments removed and remaining single phase instrument hook to aircraft buss through original breakers, all essential A.C. press. gauges backed up by D.C. warning light.

Aircraft load figured and Max. load is less than 70% of aircraft rated output of the inverter. New aircraft weight and balance figured this date and new C.G. figured May 14, 1981.

Agreed Statement of Facts, Exhibit P.

The alteration was a major alteration. The Form 337 does not, on its face, disclose a violation of paragraph XVIII.

I find that the violations charged in paragraph XVIII and XIX were not proved.

## CONCLUSIONS OF LAW

■ I conclude as a matter of law that the burden of proving a violation of 14 C.F.R. §§ 145.3, 145.51(a), 145.51(b), 43–13(a) and 43.13(b) is on the government. I conclude that the burden is not discharged by showing that the Form 337 did not, in each case, show on its face, a complete compliance with all FAA regulations or did not provide literature authorizing the alteration.

I conclude that confusion was introduced in this case when the FAA granted Garlick a Repair Station Certificate which did not allow the repair of a turbine engine, and

then issued Garlick a Type Certificate for Bell UH–1B with a Lycoming engine which is a turbine engine. I conclude that it was not shown that the work done on the Lycoming engine was, in any way, faulty, or that it made the helicopter unairworthy, and that the fine should be minimal.

I therefore fine the defendant the sume of $100.00.